1   Stephen D. Weisskopf, Esq. (State Bar No. 213596)
    sweisskopf@levatolaw.com
2   Christopher E. Stiner, Esq. (State Bar No. 276033)
    cstiner@levatolaw.com
3   LEVATOLAW, LLP
    2029 Century Park East, Suite 2910
4   Los Angeles, California 90067
    Telephone: (310) 734-2026
5   Facsimile: (310) 421-4180

6   Attorneys for Plaintiff
    TORTILLA FACTORY, LLC
7

8              UNITED STATES DISTRICT COURT

9          FOR THE CENTRAL DISTRICT OF CALIFORNIA

10

11  TORTILLA FACTORY, LLC,                Case No. 2:18-cv-02980-CAS-SK
                                          [Assigned to Hon. Christina A.
12              Plaintiff,                Snyder]

13      vs.                               **TORTILLA FACTORY'S
                                          OPPOSITION TO DEFENDANT
14                                        BETTER BOOCH'S MOTION TO
    BETTER BOOCH LLC, et al.,             DISMISS PLAINTIFF'S
15                                        COMPLAINT**

16              Defendants.               Hearing Date: July 23, 2018
                                          Time: 10:00 a.m.
17

18

19

20                                        Trial Date:  No Date Set

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................. 1

II.   BACKGROUND AND PROCEDURAL HISTORY ................................... 3

III.  LEGAL STANDARD .......................................................................... 4

IV.   ARGUMENT ...................................................................................... 6

    A.   Better Booch's Argument For Laches Is Deficient ............................ 6
        1.   There Was No Unreasonable Delay ........................................... 7
        2.   There Is No Prejudice .......................................................... 10
    B.   Better Booch's UCL Statutes of Limitations Argument Fails For The
        Same Reasons As Its Laches Argument ........................................... 11
    C.   Plaintiff's Claims Satisfy Rule 9(b) ................................................ 12
        1.   The Complaint Sufficiently Alleges That Better Booch's Sugar
            Content Is Understated ......................................................... 12
        2.   The Complaint Sufficiently Alleges Testing That Supports Its
            Alcohol Allegations ............................................................ 14
    D.   The Complaint Sufficiently Alleges Causation and Harm ................. 16
        1.   There Are Not Two Kombucha Markets ................................... 16
        2.   Tortilla Factory Alleges Proximate Cause and Injury .............. 17
    E.   Equitable Relief Is Available To Plaintiff ....................................... 21
    F.   The Disgorgement Requested is Restitutionary ............................... 22
    G.   The Complaint Sufficiently Alleges Aider and Abettor Liability ...... 22

V.    CONCLUSION .................................................................................. 25

1

# TABLE OF AUTHORITY

2

## CASES                                                                                    Page

3   *A.C. Aukerman Company v. R.l. Chaides Construction Co.*.................................. 10
4       960 F.2d 1020 (Fed. Cir. 1992)

5   *Adidas Am., Inc. v. Payless Shoesource, Inc.*.................................................... 10, 11
        540 F. Supp. 2d 1176 (D. Or. 2008)

6   *AirWair Intern. Ltd. V. Schultz* ......................................................................... 10
7       84 F. Supp. 3d 943 (N.D. Cal. 2015)

8   *Alexander Valley*
        2011 WL 5038356  ...................................................................................... 6

9   *Arista Records LLC v. Doe 3*  ........................................................................ 13, 23
10      604 F3d 110 (2nd Cir. 2010)

11  *Au-Tomotive Gold v. Volkswagen of America, Inc.* ............................................ 7
        603 F.3d 1133 (9th Cir. 2010)

12  *Baby Trend, Inc. v. Playtex Prod., LLC* ............................................................ 8
13      2013 WL 4039451 (C.D. Cal. Aug. 7, 2013)

14  *Blue Star Press, LLC v. Blasko*, 2018 WL 1904835 ....................................  19, 20
        (W.D. Tex. filed Mar. 6, 2018)

15  *Bobbleheads.com, LLC v. Wright Bros., Inc*. ................................................... 19, 20
16      259 F. Supp. 3d 1087 (S.D. Cal. 2017)

17  *Burke v. Weight Watchers Int'l, Inc.*  ................................................................ 14
        983 F. Supp. 2d 478 (D.N.J. 2013)

18  *Center For Biological Diversity v. Veneman*  .................................................... 5
19      394 F.3d 1108, 1109-1114 (9th Cir. 2005)

20  *Cervantes v. City of San Diego*  ........................................................................ 4
        5 F.3d 1273, 1274 (9th Cir. 1993)

21  *Cf. English v. General Elec. Co.*  ...................................................................... 15
22      496 U.S. 72, 78-79 (1990)

23  *City of Sherill v. Oneida Indian Nation* .......................................................... 6
        544 U.S. 197 (2005)

24  *Clayworth v. Pfizer, Inc.* ................................................................................. 22
25      49 Cal. 4th 758 (2010)

26  *Conley v. Gibson* .............................................................................................. 4
        355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)

27  *Cooper v. Pickett* ............................................................................................ 12
28      137 F.3d 616, 627 (9th Cir. 1997)

ii

*Couveau v. Am. Airlines, Inc.* ................................................................... 6
   218 F.3d 1078, 1083 (9th Cir.2000)

*Epstein v. Wash. Energy Co.* ..................................................................... 4
   83 F.3d 1136, 1140 (9th Cir. 1996)

*Fiol v. Doellstedt* ................................................................................... 22
   50 Cal.App.4th 1318, 1325 (1996)

*Fitbug Ltd. v. Fitbit*, Inc.
   78 F.Supp.3d 1180 (N.D. Cal. 2015) ...................................................... 9

*Harold H. Huggins Realty, Inc. v. FNC, Inc.* ........................................... 18
   634 F.3d 787, 799 fn. 5 (5th Cir. 2011)

*Hemstreet v. Computer Entry Sys. Corp.* ................................................. 11
   972 F.2d 1290 (Fed. Cir. 1992)

*In re Hydroxycut Mktg. & Sales Practices Litig.* ..................................... 23
   299 F.R.D. 648 (S.D. Cal. 2014)

*In re Jamster Marketing Litig.* ................................................................ 24
   2009 WL 1456632, (S.D. Cal. May 22, 2009)

*In Re Katz Interactive Call Processing Patent Litigation.* ...................... 11
   2009 WL 8635982 (C.D. Cal. 2009)

*In re McCormick & Co., Inc., Pepper Prod. Mktg. & Sales Practices Litig.* ........ 17
   215 F. Supp. 3d 51, 58 (D.D.C. 2016)

*In re Superior Air Parts, Inc.* ............................................................. 13, 23
   486 BR 728, 740 (ND TX 2012)

*Jacobo v. Ross Stores, Inc.* ..................................................................... 13
   2016 U.S. Dist. LEXIS 86958 (C.D. Cal. Feb. 23, 2016)

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.* ............................................ 6
   304 F.3d 829 (9th Cir. 2002)

*Johnson v. Knowles* .................................................................................. 4
   113 F.3d 1114, 1117 (9th Cir. 1997)

*Kwan v. SanMedica Int'l* ......................................................................... 13
   854 F.3d 1088 (9th Cir. 2017)

*Lee v. City of Los Angeles* ......................................................................... 5
   250 F.3d 668, 688 (9th Cir. 2001)

*Lexmark Int'l v. Static Control Components, Inc.* ..................................... 16
   134 S.Ct. 1377 (2014)

*Lifeway Foods, Inc. v. Millenium Prod., Inc.* ............................................. 9
   2016 WL 7336721 (C.D. Cal. Dec. 14, 2016)

iii

*MGIC Indem. Corp. v. Weisman* .................................................................. 5
   803 F.2d 500, 504 (9th Cir. 1986)

*Misheqal Wappo Tribe of Alexander Valley v. Salazar* ............................... 6
   2011 WL 5038356 (N.D. Ca. Oct. 24, 2011)

*Moore v. Kayport Package Exp., Inc.*
   885 F.2d 531, 540 (9th Cir. 1989)

*Moyle v. Liberty Mut. Ret. Ben. Plan* ....................................................... 11
   985 F. Supp. 2d 1247 (S.D. Cal. 2013)

*Nutrition Distribution LLC v. PEP Research, LLC* ........................... 18, 19
   2017 WL 3972509 (S.D. Cal. Sept. 7, 2017)

*Neubronner v. Milken* ................................................................................. 13
   6 F.3d 666, 672 (9th Cir. 1993)

*Obesity Research Inst., LLC v. Fiber Research Int'l, LLC* ........................ 6
   165 F. Supp. 3d 937 (S.D. Cal. 2016)

*Pamlab LLC v. Seton Pharm., LLC* ........................................................... 15
   2010 U.S. Dist. LEXIS 128819 (S.D.N.Y. Dec. 6, 2010)

*Parent v. MillerCoors LLC* ........................................................................ 25
   2016 WL 3348818 (S.D. Cal. June 16, 2016)

*Perez v. Monster Inc.* ................................................................................. 25
   149 F. Supp. 3d 1176 (N.D. Cal. 2016)

*Pipe Restoration Techs., LLC v. Pipeline Restoration Plumbing, Inc.* ..... 8
   2014 WL 12573357 (C.D. Cal. July 8, 2014)

*POM Wonderful LLC v. Coca-Cola Co.* ................................................... 19
   134 S. Ct. 2228 (2014)

*Procter & Gamble Co. v. Chesebrough-Pond's Inc.* ................................. 15
   588 F. Supp. 1082, 1085 (S.D.N.Y.), *aff'd*, 747 F.2d 114 (2d Cir. 1984)

*Reliable Carriers, Inc. v. Excellence Auto Carriers, Inc.* ................... 19, 20
   2012 WL 1931519 (E.D. Mich. May 29, 2012)

*Salazar v. Honest Tea, Inc.* ....................................................................... 15
   74 F. Supp. 3d 1304, 1313 (E.D. Cal. 2014)

*Saul Zaentz Co. v. Wozniak Travel, Inc.* .................................................... 9
   627 F. Supp. 2d 1096 (N.D. Cal. 2008)

*Saunders v. Superior Court* ....................................................................... 22
   27 Cal.App.4th 832, 846 (1994)

*Schulz v. Neovi Data Corp.* ....................................................................... 24
   152 Cal. App. 4th 86 (2007)

*Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.* ............................... 5

iv

368 F.3d 1053, 1061 (9th Cir. 2004)

*Thompson v. Paul* ................................................................................. *12*
657 F. Supp. 2d 1113, 1129 (D. Ariz. 2009)

*Tisch Hotels, Inc. v. Americana Inn, Inc.* ............................................. 10
350 F.2d 609 (7th Cir. 1965)

*TrafficSchool.com, Inc. v. Edriver Inc.* ............................................... 18
653 F.3d 820, 826-27 (9th Cir. 9011)

*Tryon v. DSB Enterprises, Inc.* ............................................................. 21
2006 WL 234728 (Cal. Ct. App. Feb. 1, 2006)

*Tyler v. Cisneros* ..................................................................................... 4
136 F.3d 603, 607 (9th Cir. 1998)

*Vess v. Ciba-Geigy Corp. USA* ............................................................ 12
317 F.3d 1097 (9th Cir. 2003)

*Wall & Assocs., Inc. v. Better Bus. Bureau of Cent. Virginia, Inc.* .................. 19, 20
685 F. App'x 277 (4th Cir. 2017)

*Wiseman Park, LLC v. S. Glazer's Wine & Spirits, LLC* ........................ 21
16 Cal. App. 5th 110 (Ct. App. 2017)

**RULES**
Fed.R.Civ.P. 9(b) ................................................................................. 12

Fed.R.Civ.P. 12(b)(6) ............................................................................ 5

Fed.R.Evid. 201(b) ................................................................................

v

1    **I.    INTRODUCTION**

2         Tortilla Factory, LLC ("Tortilla Factory") submits its opposition to the

3    motion to dismiss filed by Better Booch, LLC ("Better Booch") on the grounds that

4    Better Booch is making spurious arguments, misstating the allegations in the

5    Complaint, assuming as true statements of facts that are unsupported by any

6    allegation in the Complaint, and attempting to hold Tortilla Factory to a standard of

7    proof inapplicable at the pleading stage.[1]

8         Tortilla Factory and Better Booch both manufacture and sell kombucha, a

9    popular fermented tea beverage.  Tortilla Factory's kombucha products contain

10   more than 0.5% percent alcohol and therefore are marketed and sold in compliance

11   with state and federal laws applicable to alcoholic beverages.  Recently, Tortilla

12   Factory tested the kombucha manufactured by Better Booch, using the industry

13   leading testing method, Headspace Gas Chromatography with Mass Spectrometry.

14   This testing revealed that Better Booch's kombucha products contained between

15   1.9% and 2.7% alcohol, *four to five times the legal limit*, yet Better Booch does not

16   comply with any of the federal or state regulations for alcoholic products and

17   describes its kombucha as containing "[l]ess than .5% alcohol by volume" on the

18   label.  Better Booch's nutrition label also appears to misrepresent the amount of

19   sugar in the product.  This has allowed Better Booch to gain a competitive

20   advantage over Tortilla Factory and caused Tortilla Factory to lose sales to Better

21   Booch.  Consequently, Tortilla Factory brought this action against Better Booch and

22

23

24   _____

25        [1] Certain other defendants have filed, or may subsequent to this filing file, joinders to
     Better Booch's motion to dismiss. Tortilla Factory thus requests the Court to consider this
26   opposition as a response to any joinder by any other party adopting the arguments of Better
     Booch's motion to dismiss.
27

28   (footnote continued)

1   its Distributors[2] for violations of the Lanham Act and Business & Professions Code

2   Section 17200 and 17500.

3       Better Booch's motion to dismiss presents baseless and confusing arguments,

4   none of which warrant the dismissal of Tortilla Factory's claims. ***First***, Better

5   Booch's statute of limitations and laches arguments are based entirely on the

6   assumption that Tortilla Factory has a duty to test the alcohol and sugar

7   representations of its competitors without pointing to any allegation in the

8   Complaint that would have provided Tortilla Factory of notice of Better Booch's

9   misrepresentations. Such a duty does not exist in the case law, and should not as it

10  would add the burden of investigation to every competitor of policing the

11  marketplace. Further, Better Booch claims that Tortilla Factory has known about

12  Better Booch since 2012, which is not pled in the Complaint. All that is pled is that

13  Better Booch claims it has been selling Kombucha since 2012. (Complaint, ¶ 22.)

14      ***Second***, Better Booch argues that Tortilla Factory must show test results

15  proving it underestimates its kombucha products' sugar content. It is sufficient at

16  the pleading stage to allege that Tortilla Factory's knowledge of the kombucha

17  brewing process provides a basis to assert that Better Booch's sugar disclosures are

18  false.

19      ***Third***, Better Booch alternately argues that because the Alcohol and Tobacco

20  Tax and Trade Bureau ("TTB") frequently asked questions fails to identify any

21  specific test method for testing alcohol, the Court's authority is essentially

22  preempted unless and until Tortilla Factory exhausts all possible testing methods for

23  alcohol. This argument is unsupported by the case law, and unpersuasive given that

24  the Kombucha Brewers International ("KBI") is lobbying for the TTB to adopt the

25

26  _____

27      [2] References to the "Distributors" herein refer to KeHE Distributors, Inc., Hi-Touch
    Distribution, Inc., Reliant Food Services, Inc., and Los Angeles Distributing Company.

28

1  very test method used by Tortilla Factory, Headspace Gas Chromatography with
2  Mass Spectrometry as described in the Complaint.

3      ***Fourth***, Defendants' argument that the Complaint fails to allege a
4  proximately caused injury is premised almost entirely on the unsupported assertion
5  that there are two different kombucha markets (one for alcoholic kombucha and one
6  for non-alcoholic kombucha) and Tortilla Factory and Better Booch are therefore
7  not competitors.  To support this assertion, Better Booch misrepresents the
8  allegations in the Complaint wherein it states that Tortilla Factory essentially admits
9  there are two different markets.  As demonstrated below, Tortilla Factory has pled
10 that Better Booch is a competitor and that both sell to the same consumers.  Better
11 Booch seeks to argue outside the four corners of the complaint that the kombucha
12 products are sold at different locations to different consumers, an allegation
13 unsupported by any part of the Complaint.  Such an assumption is simply improper.

14     Accordingly, Tortilla Factory asks that Better Booch's motion to dismiss be
15 denied in its entirety.

16 **II.    BACKGROUND AND PROCEDURAL HISTORY**

17     Kombucha is a beverage made by fermenting sweetened tea using a mixture
18 of bacteria and yeast. [Dkt. No. 1, Complaint ("Complaint"), ¶ 14]. Kombucha,
19 when brewed in the traditional process, contains ingredients viewed as beneficial by
20 its health-conscious consumers.  [*Id.*]  However, traditionally brewed kombucha can
21 contain more than 0.5 percent alcohol.  [*Id.*, ¶ 15]  Beverages that contain more than
22 0.5 percent are subject to state and federal regulations.  [*Id.*, ¶¶ 15-17, 57).

23     In 2010, Tortilla Factory entered the market selling traditionally brewed
24 kombucha with more than 0.5 percent.  [*Id.*, ¶¶ 18-19]  Tortilla Factory elected to
25 comply with applicable statutes and regulations governing the manufacture,
26 distribution, and sale of its kombucha as an alcoholic beverage.  [*Id.*, ¶ 20]

27

28

3

In 2017, Tortilla Factory first learned that Better Booch's product line has an alcohol content above the 0.5 percent threshold that required it to comply with state and federal laws.  [*Id.*, ¶¶ 28, 57]  Subsequent testing revealed samples with an alcohol content of between 1.9 and 2.7 percent, four to six times the legal limit.  [*Id.*, ¶ 28]  Better Booch has continued selling, marketing and distributing their kombucha products without disclosing to consumers this alcohol content, along with committing other violations of state and federal law.  [*Id.*, ¶¶ 56-57]

Tortilla Factory is a direct competitor of Better Booch with respect to brewing kombucha for sale in retail and wholesale settings. [*Id.*, ¶ 32] The parties are vying for the same dollars from the same consumers, and did so at all times relevant to this action, except that Tortilla Factory did not seek to sell alcohol to minors.  [*Id.*]

Consequently, on April 9, 2018, Tortilla Factory filed its complaint against Better Booch and the Distributors.

## III.   LEGAL STANDARD

A complaint should not be dismissed for failure to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6) unless it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Johnson v. Knowles*, 113 F.3d 1114, 1117 (9th Cir. 1997). When the legal sufficiency of a complaint's allegations is tested with a motion under Rule 12(b)(6), "[r]eview is limited to the complaint."  *Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993). All factual allegations set forth in the complaint are taken as true and construed in the light most favorable to the plaintiff.  *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996). The Court must give the plaintiff the benefit of every inference that reasonably may be drawn from well-pleaded facts. *Tyler v. Cisneros*, 136 F.3d 603, 607 (9th Cir. 1998).

"Denial of leave to amend 'is improper unless it is clear . . . that the complaint could not be saved by any amendment.'" *Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1061 (9th Cir. 2004); *Center For Biological Diversity v. Veneman*, 394 F.3d 1108, 1109-1114 (9th Cir. 2005).

Generally, the Court "may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). Rule 12(b)(6) expressly provides that "when matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed.R.Civ.P. 12(b)(6).

There are two exceptions to the requirement that consideration of extrinsic evidence converts a Rule 12(b)(6) motion to a motion for summary judgment. *Lee*, 250 F.3d at 688.  First, the Court "may consider material which is properly submitted as part of the complaint on a motion to dismiss without converting the motion to dismiss into a motion for summary judgment." *Id*. If the documents are not physically attached to the complaint, they may be considered if the documents' authenticity is not contested and the plaintiff's complaint necessarily relies on them. *Id*. at 689.  Second, pursuant to Federal Rule of Evidence 201, the Court may take judicial notice of "matters of public record" without converting a motion to dismiss into a motion for summary judgment. *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986).  But the Court may not take judicial notice of a fact that is "subject to reasonable dispute." Fed.R.Evid. 201(b).

/ / /

/ / /

## IV.   ARGUMENT

### A.   Better Booch's Argument For Laches Is Deficient

5

Better Booch argues that the doctrine of laches should preclude the present action because Tortilla Factory had an obligation to test Better Booch's products for mislabeled and illegal alcohol content upon Better Booch entering the kombucha market in 2012.

First, it should be noted that the preclusion of outside evidence and the resolution of all doubt in favor of the plaintiff in a 12(b)(6) motion "poses a nearly insurmountable obstacle to the facts-sensitive inquiry associated with laches." *Misheqal Wappo Tribe of Alexander Valley v. Salazar*, 2011 WL 5038356, at *7 (N.D. Ca. Oct. 24, 2011); *see also Couveau v. Am. Airlines, Inc.,* 218 F.3d 1078, 1083 (9th Cir.2000) ("Because the application of laches depends on a close evaluation of all the particular facts in a case, it is seldom susceptible of resolution by summary judgment"). The *Alexander Valley* court noted that in the case of *City of Sherill v. Oneida Indian Nation*, 544 U.S. 197 (2005), the Supreme Court had before it "a litany of summary judgment and related motions," and "[it was only with that type of complete record that the Court could, on its own volition, conduct the critical analysis of the facts required by laches." *Alexander Valley*, 2011 WL 5038356, at *7. As persuasively discussed by the *Alexander Valley Court*, this high burden is a nearly impossible task on a 12(b)(6) motion with a no factual record.

Finally, "[b]ecause laches is an equitable remedy, laches will not apply if the public has a strong interest in having the suit proceed." *Obesity Research Inst., LLC v. Fiber Research Int'l, LLC*, 165 F. Supp. 3d 937, 954 (S.D. Cal. 2016) (*citing Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 840 (9th Cir. 2002)). Such inquiry is fact based and obviously inappropriate at the motion to dismiss stage. *Id.* (finding false advertising claim alleging false nutritional claims obviously inappropriate for resolution on a motion to dismiss despite 9-year delay in filing suit). In the instant case, the danger of undisclosed alcohol content to certain

members of the public—e.g., pregnant women, children, people with late stage liver disease or other alcohol sensitivities, etc.—is apparent.

In any event, Better Booch must show the following "(1) plaintiff's delay in filing suit was unreasonable, and (2) defendant would suffer prejudice caused by the delay if the suit were to continue.  A Court must find both factors for a suit or remedy to be barred by laches." *Au-Tomotive Gold v. Volkswagen of America, Inc.*, 603 F.3d 1133, 1139 (9th Cir. 2010).

### 1.      There Was No Unreasonable Delay

The Complaint alleges that Better Booch's website claims that in 2012 it first developed its kombucha product. [Complaint ¶ 22.]  There is no allegation that Tortilla Factory knew about Better Booch in 2012.  It is further alleged that Better Booch actively sought to deceive and mislead the public and its competitors regarding the alcohol content in its products.  In a blog post, Better Booch stated "we use several safety measures to control and monitor our yeast populations, such as cold crashing and keeping our product aerated" in order to ensure its kombucha products are under the 0.5% alcohol limit. [Id. at ¶ 23.]  Tortilla Factory first became aware that Better Booch was not in compliance with alcohol laws, and had been misleading the public and its competitors, within the six months prior to filing the Complaint.  [Id., ¶ 28.] Tortilla Factory further alleges on information and belief that the sugar content is understated. [Id., ¶ 29.]

Better Booch argues that Tortilla Factory should have tested its kombucha products when they were first introduced in 2012, and, presumably, as Better Booch introduced new products after 2012, Tortilla Factory should have tested each of those new products as Better Booch released them.  Implicit in this argument is that public statements made by Better Booch regarding its alcohol content should be disregarded as lies, e.g. the 2016 blog post identified at paragraph 23 of the Complaint.  It further implies that there is some global duty of every company to

7

1  actively monitor and investigate its competitors, which is not supported by any case

2  law.

3      Tortilla Factory employees, e.g. Michael Faye, do not have the ability to

4  distinguish between a beverage with a 0.5 percent alcohol content and a 1.0 percent

5  alcohol content; nor does Tortilla Factory have the ability to test alcohol content at

6  its production facility.  Therefore, Better Booch's argument necessarily asserts that

7  it was incumbent upon Tortilla Factory to purchase samples of Better Booch's

8  products and commission a third-party laboratory to conduct the scientific analysis

9  necessary to determine alcohol content.  All with no apparent evidence or reason to

10  suspect that Better Booch was misrepresenting its alcohol level or sugar level.

11      Better Booch supports imposition of this duty with one published case, *Pipe

12  Restoration Techs., LLC v. Pipeline Restoration Plumbing, Inc.*, 2014 WL 12573357

13  (C.D. Cal. July 8, 2014).  First, it must be noted that *Pipe Restoration* was decided

14  on a summary judgment motion, not on a 12(b)(6) motion to dismiss as here with a

15  significant factual record.  In *Pipe Restoration,* the plaintiff asserted an action for

16  false advertising based on a competitor's misrepresentation that the epoxy lining of

17  its product was below 10 mils.  The undisputed factual record showed that the

18  plaintiff obtained a sample of its competitors pipe in 2008 and was capable of

19  testing the thickness of the epoxy lining on its premises through use of a

20  micrometer, but chose to wait until 2014 to send the sample to a third-party lab for

21  testing.  The Court determined that because plaintiff's employee admitted that he

22  could have tested the pipe on the premises, plaintiff's claim that it needed third-

23  party lab testing was not credible.  The Court in Pipe Restoration did <u>not</u> determine

24  that the plaintiff was under a duty to send the pipes it had collected out to a third-

25  party lab, as Better Booch has argued.

26      The second unpublished decision relied on by Better Booch, *Baby Trend, Inc.

27  v. Playtex Prod., LLC*, 2013 WL 4039451 (C.D. Cal. Aug. 7, 2013), is simply

28

8

inapposite.  In *Baby Trend*, plaintiffs sued Playtex for its diaper pail "Proven # 1 in Odor Control" advertising campaign.  Plaintiffs alleged that any test that was conducted was not performed "under the most rigorous conditions of emptying the pail."  Id. at *1.  Plaintiff further maintained that it was not on notice of Playtex's misleading advertising until it learned of a verdict against Playtex in an unrelated case.  Id.  The *Baby Trend* court dismissed the case determining that plaintiff made no effort to investigate its claim that Playtex's testing methods lacked rigor (including by emptying the pail) or otherwise explain why it could not.  The *Baby Trend* case was not a dispute about whether Playtex was "# 1 in Odor Control," but rather the quality of the testing Playtex itself performed to "prove" that it was. Alcohol content, unlike odor control, has established testing methods.  The Complaint presumes that Better Booch was aware of the alcohol content in its products and lied about it, not that its testing methodology lacked rigor. Accordingly *Baby Trend* is inapposite.

Further case law cited by Better Booch, but not discussed in its MTD, is equally unpersuasive.  For example in *Saul Zaentz Co. v. Wozniak Travel, Inc.*, 627 F. Supp. 2d 1096 (N.D. Cal. 2008), counsel for the owner of the Hobbit trademark had commissioned search reports dating back to 1988 showing the infringing activity on its trademark, but claimed that she had not reviewed them until 2003, 15 years later. Similarly in *Lifeway Foods, Inc. v. Millenium Prod., Inc.*, 2016 WL 7336721 (C.D. Cal. Dec. 14, 2016), a vice president of the plaintiff provided in a declaration submitted to the Court that he was aware of the alleged misrepresentations in 2011, but no credible explanation was provided as to why plaintiffs waited until 2016 to file suit.  Finally, in *Fitbug Ltd. v. Fitbit*, Inc. 78 F.Supp.3d 1180 (N.D. Cal. 2015) the plaintiff began emailing the defendant upon the announcement of the defendant's product line alleging trademark infringement

in 2008, yet did not file suit until 2013. The explicit notice evidenced in each of these cases is simply not present in the instant case, making them inapposite.

### 1.  There Is No Prejudice

Regardless of whether the Court determines Tortilla Factory unreasonably delayed testing its competitor's products, the Complaint presents no allegations on which to base a finding of expectation or evidentiary prejudice.[3]

*Expectation-Based Prejudice*: To show expectation-based prejudice, Better Booch must provide evidence that it "took actions or suffered consequences that it would not have, had [Tortilla Factory] brought suit promptly." *AirWair Int'l*, 84 F. Supp. 3d at 955.  Such prejudice can include, for example, where "a defendant 'change[s] their ... distribution activities in reliance on [plaintiff's] conduct,' or where a defendant makes 'continuing investments and outlays ... in connection with the operation of its business.'" *Id.* (*quoting Danjaq*, 263 F.3d at 955 (brackets in original)).

In its MTD, Better Booch fails to describe any prejudice that it purportedly suffered due to Tortilla Factory's alleged "delay."  Rather, it only alleges that "it has dedicated significant financial investment and resources to produce and market its brand of products." [MTD at 12:8-9.]  Yet it is well-established that "continuing to do business, without more" is insufficient to show prejudice.  *AirWair*, 84 F. Supp. 3d at 956.  Moreover, "the cases make clear that expectation-based prejudice is not simply a matter of expending resources promoting" a product.  *Adidas Am., Inc. v. Payless Shoesource, Inc.*, 546 F. Supp. 2d 1029, 1073 (D. Or. 2008) (*citing Tisch*

---

[3] Better Booch has not argued it is entitled to a presumption of prejudice, but it is well established that any presumption of laches "completely vanishes upon the introduction of evidence sufficient to support a finding of the nonexistence of a presumed fact (i.e., no unreasonable delay or no prejudice)." *Adidas Am., Inc. v. Payless Shoesource, Inc.*, 540 F. Supp. 2d 1176, 1181 (D. Or. 2008) (internal quotations omitted) (*citing A.C. Aukerman*, 960 F.2d at 1038). The Complaint clearly states Tortilla Factory was unaware of Better Booch's misrepresentations until six months prior to filing the Complaint.  [Complaint ¶¶ 28-29.]

OPPOSITION TO MOTION TO DISMISS

*Hotels, Inc. v. Americana Inn, Inc.*, 350 F.2d 609, 615 (7th Cir. 1965)).  If so, "relief would have to be denied in practically every case of delay."  Id.

Instead, "courts must look for a change in the economic position of the alleged infringer during the period of delay."  Id.  Put another way, there must be a "nexus" between the expenditures and the plaintiff's delay in filing suit: "[i]t is not enough that the alleged infringer changed his position … [t]he change must be because of and as a result of the delay, not simply a business decision to capitalize on a market opportunity."  *Hemstreet v. Computer Entry Sys. Corp.*, 972 F.2d 1290, 1294 (Fed. Cir. 1992).  Better Booch has not established any such "nexus" between its business development and Tortilla Factory's purported delay.

***Evidence-Based Prejudice*:**  To show evidence-based prejudice, "[d]efendants must identify key witnesses or evidence whose absence has resulted in the defendant's inability to present a full and fair defense on the merits."  *Moyle v. Liberty Mut. Ret. Ben.* Plan, 985 F. Supp. 2d 1247, 1262 (S.D. Cal. 2013), *aff'd in part, rev'd in part on other grounds*, 823 F.3d 948 (9th Cir. 2016); *see also Adidas Am., Inc. v. Payless Shoesource, Inc.*, 529 F. Supp. 2d 1215, 1254 (D. Or. 2007) ("[c]onclusory statement that there are missing witnesses, that witnesses' memories have lessened ... are not sufficient to establish evidentiary prejudice").  Furthermore, Better Booch must "explain[] why this evidence is important to its case, or discuss[] why the same facts cannot be otherwise proved."  *In re Katz Interactive Call Processing Patent Litig.*, 2009 WL 8635982, at *60 (C.D. Cal. 2009). Better Booch has not even made a cursory attempt at identifying specific witnesses beyond arguing that it will be obligated to respond to discovery. [MTD at 12:18-20.] Therefore, no evidentiary prejudice is apparent.

**B.    Better Booch's UCL Statutes of Limitations Argument Fails For The Same Reasons As Its Laches Argument**

1  Better Booch's argument that its UCL Action accrued outside the applicable
2  statute of limitations is again based on the unpublished *Baby Trends* case and fails
3  for the same arguments stated above.  There is no duty to test, and Tortilla Factory's
4  knowledge of the wrongful conduct of Better Booch cannot be implied from the four
5  corners of the Complaint.

6  **C.   Plaintiff's Claims Satisfy Rule 9(b)**

7  Better Booch alternatively argues that Tortilla Factory has failed to plead with
8  particularity the fraudulent statements made pursuant to Rule 9(b).

9  First, it must be noted that Better Booch improperly bifurcates its argument,
10  presenting its challenges of claims of alcohol and sugar misrepresentations
11  separately.  A Rule 12(b)(6) motion cannot be used to challenge just certain
12  allegations within a claim.  Rather, such a challenge must be made by *motion to*
13  *strike* under Rule 12(f).  *See Thompson v. Paul*, 657 F. Supp. 2d 1113, 1129 (D.
14  Ariz. 2009).  Better Booch has made no effort to satisfy the requirements of Rule
15  12(f) motion.

16  Regardless, the Court cannot dismiss Tortilla Factory's claims without
17  finding that the Complaint's allegations of alcohol and sugar misrepresentations are
18  <u>both</u> insufficiently supported.  "In alleging fraud or mistake, a party must state with
19  particularity the circumstances constituting fraud or mistake." *See* Fed. R. Civ. P.
20  9(b).  To satisfy the pleading requirements of Rule 9(b), a complaint must plead
21  "'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-*
22  *Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (*quoting Cooper v. Pickett*,
23  137 F.3d 616, 627 (9th Cir. 1997)).

24  As addressed below on the face of the complaint these details are apparent.
25  Better Booch's labels understate its sugar content and contain misrepresentations
26  that its kombucha products are nonalcoholic.

27
28

1

2

**1.  The Complaint Sufficiently Alleges That Better Booch's**
**Sugar Content Is Understated**

3

4

5

6

7

8

In asserting a plausible claim, nothing in *Twombly* or *Iqbal* precludes or alters the right of plaintiffs to plead essential facts based on "information and belief" if otherwise appropriate. *Arista Records LLC v. Doe 3* 604 F3d 110, 120 (2nd Cir. 2010); *In re Superior Air Parts, Inc.*, 486 BR 728, 740 (ND TX 2012) (fact that allegation begins with "information and belief" does not "automatically" render it legally insufficient).

9

10

11

12

13

The Complaint alleges that Better Booch's kombucha products list a sugar content of 5 grams.  [Complaint, ¶ 31.]  Given Tortilla Factory's knowledge of the kombucha manufacturing process, such representations are almost assuredly false. [Id.]  Such allegations are sufficient at the pleading stage to allege sugar representations made by Better Booch were false.

14

15

16

17

18

19

20

21

22

23

24

25

26

In support of its argument, Better Booch cites to *Kwan v. SanMedica Int'l*, 854 F.3d 1088 (9th Cir. 2017). In *Kwan,* the plaintiff challenged claims by supplement company that it had clinical data substantiating the health claims of its products. The Court determined that California does not provide a private cause of action that advertising claims lack substantiation. *Id.* at 1096-97. Tortilla Factory has not alleged a lack of scientific data substantiating the health claims of Better Booch's products, but only that the amount of sugar described on its bottle is understated. Accordingly, *Kwan* is inapposite. Further, precedent provided by Better Booch is equally unavailing because they present circumstances where the plaintiffs did not detail the actual misrepresentations or identify the facts underlying the information and belief which support certain allegations—clearly not the circumstances presented here.  *See Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989); *Jacobo v. Ross Stores, Inc.*, 2016 U.S. Dist. LEXIS 86958,

27

28

13

1  at *5 (C.D. Cal. Feb. 23, 2016); *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir.
2  1993).

3      If the Court is inclined to strike Tortilla Factory's sugar allegations, Tortilla
4  Factory would ask the Court for leave to amend to supplement the allegations with
5  any further evidence that may come to light.

## 2. The Complaint Sufficiently Alleges Testing That Supports Its Alcohol Allegations

8      Next, Better Booch argues that allegations of alcohol misrepresentations
9  cannot satisfy Rule 9(b) unless Tortilla Factory alleges results from all testing
10 methods, without even identifying a single test it believes Tortilla Factory should
11 have performed.  Better Booch asserts that "Tortilla Factory must allege specific
12 facts showing Better Booch's products were found to contain more than 0.5%
13 alcohol… using ***all*** testing methodologies." [MTD at 15:2-4.]  Yet, Better Booch
14 acknowledges that there are no "approved" tests.  [MTD at 14:19-28 ("[P]roducers
15 may use any method that has been formally validated.")[4]]

16     Better Booch is almost certainly aware that the Kombucha Brewers
17 International ("KBI"), the leading kombucha industry association, of which it is a
18 member, recommends Headspace Gas Chromatography combined with Mass
19 Spectrometry for alcohol testing,[5] the exact test used by Tortilla Factory.
20 (Complaint, ¶ 28.)  Despite this and knowing that the TTB does not have a preferred
21 or "approved" test, Better Booch still argues to this Court that Tortilla Factory's
22 claims are insufficiently specific because it has not utilized all unidentified testing

23 ───────────────────

24     [4] Tortilla Factory presumes Better Booch's argument refers to the UCL cause of
25 action based in part on violations of TTB labeling and distribution requirements though
   Better Booch does not make this clear. Obviously this argument does not address the other
26 public misrepresentations noted in the Complaint.

27     [5] *See* https://kombuchabrewers.org/resources/approved-alcohol-testing-methods/
28 (footnote continued)

1  methods available to determine alcohol in kombucha.  This argument simply fails on

2  its face.

3      The legal support Better Booch provides in support of its argument is equally

4  confused.  The primary case provided by Better Booch is *Burke v. Weight Watchers*

5  *Int'l, Inc.*, 983 F. Supp. 2d 478 (D.N.J. 2013).[6]  In *Burke,* implementing regulations

6  promulgated by the FDA allowed a "safe harbor provision" such that calorie

7  labeling would be considered accurate if any one of five methods showed only a

8  20% deviation from listed calories.  *Id.* at 483.  The *Burke* court determined that the

9  FDA regulations preempted any state law claim and that plaintiff needed to plead

10  that defendant was not entitled to the safe harbor provision, i.e. that not one of the

11  five methods showed the requisite accuracy.  There was also a federal regulation

12  that identified the tests to be used.

13      In the present case, there is no regulation or statute that provides a similar safe

14  harbor provision for alcohol labeling or that lists the specific tests to be used or that

15  there is even a comprehensive statutory scheme that would implicate preemption.

16  *Cf. English v. General Elec. Co.*, 496 U.S. 72, 78-79 (1990) (the Supreme Court

17  explained the three ways in which federal law will preempt a state law: (1) Congress

18  can explicitly do so, (2) Congress can impliedly do so by creating through a

19  pervasive scheme of federal regulation with no room for the states to supplement;

20  and (3) state law is pre-empted to the extent that it actually conflicts with federal

---

22  [6] The remaining case law provided by Better Booch is equally unavailing.  One of

23  the cases concern the FDA's Food Labeling Rule, a 12-sample test method set forth in 21 C.F.R. § 101.9(g) to challenge nutrient content claims.  *See Salazar v. Honest Tea, Inc.*, 74

24  F. Supp. 3d 1304, 1313 (E.D. Cal. 2014).  In that case there was a federal regulation establishing a test methodology for nutrient contents and plaintiff did not use the test.  No

25  such facts exist here.  The other two cases concern motions for a preliminary injunction with significantly greater evidentiary requirements than are relevant for a 12(b)(6) motion.

26  *See Pamlab LLC v. Seton Pharm., LLC*, 2010 U.S. Dist. LEXIS 128819 (S.D.N.Y. Dec. 6,

27  2010); *Procter & Gamble Co. v. Chesebrough-Pond's Inc.*, 588 F. Supp. 1082, 1085 (S.D.N.Y.), *aff'd,* 747 F.2d 114 (2d Cir. 1984).

28

law).  The TTB statements on its website in response to frequently asked questions cited by Better  Booch does not qualify in form or substance.

In any event, Better Booch's failure to label its kombucha product with required TTB warnings is only one of the misrepresentations it makes. For example, also noted in the Complaint are Better Booch's misrepresentations on its blog. These misrepresentations would be separate and apart from TTB regulations.  In other words, the Court could determine that Better Booch misrepresented its alcohol content was below 0.5% without reference to any TTB regulation or testing methodology.

**D.    The Complaint Sufficiently Alleges Causation and Harm**

**1.  There are not Two Kombucha Markets**

Initially, Tortilla Factory must address the contention that Tortilla Factory and Better Booch compete in separate markets.  The Complaint clearly states that Better Booch and Tortilla Factory compete for the same customers in the same market. There is a segment of the market that needs to drink kombucha without any alcohol: pregnant women, children, people with late stage liver disease, people taking certain medications (e.g. benzodiazepine), or people with other alcohol sensitivity.  As an aside the fact that Better Booch is unconcerned with the health risks that alcohol presents to these customers is shocking.  Nevertheless, it is apparent that this is not the distinction Better Booch is trying to draw.

Better Booch argues that because it lies about kombucha's alcohol content it attracts customers who would not otherwise purchase Tortilla Factory's kombucha with its accurate disclosure of alcohol content.  In essence, Better Booch argues that its misrepresentations have been so thorough and pervasive that the kombucha market has segmented into two totally different groups of consumers: one set who are seeking an "alcoholic" kombucha with greater than 1.4 percent alcohol, and others who are seeking a "non-alcoholic" kombucha with less than 0.5 percent

16

alcohol.  This is not the truth of the market, nor is it how the market is described in the Complaint.  Rather, the truth is that the health conscious consumers of kombucha will weigh the relative alcohol content of two different kombuchas when making their purchasing decision.  By presenting itself as a zero percent alcohol drink rather than a 2-3% alcohol drink, Better Booch obtains a competitive advantage over Tortilla Factory's lower alcohol products that is undeniable.

It would be the height of inequity if companies were able to insulate themselves from claims for false advertising by arguing that their lies created a different customer base from their competitors.  Better Booch presents no case law to support such an argument and Tortilla Factory would urge the Court that with the danger to public health that Better Booch's conduct poses, this is not the case in which the Court should break new legal ground.

### 2.  Tortilla Factory alleges Proximate Cause and Injury

The Supreme Court's decision in *Lexmark Int'l v. Static Control Components, Inc.*, 134 S.Ct. 1377 (2014), created a two-part test to determine whether a plaintiff can bring a cause of action under the Lanham Act: (1) plaintiff's interest must be within the zone of interests that the Act is intended to protect, and (2) plaintiff must allege that its injuries were proximately caused by defendant's deceptive practices, *id.* at 1388-90. As Tortilla Factory is a competitor not a consumer, Tortilla Factory easily passes the "zone of interest" test. Better Booch, however, argues that Tortilla Factory's injuries were not proximately caused by its false advertising.

To allege proximate causation of an injury, a plaintiff must allege that defendant's "deception of consumers cause[d] them to withhold trade from the plaintiff." *Id.* at 1391. Even though proving causation and damages at trial can be difficult, the *Lexmark* Court noted that "potential difficulty in ascertaining and apportioning damages is not ... an *independent* basis for denying standing where it is adequately alleged that a defendant's conduct has proximately injured an interest of

17

the plaintiff's that the statute protects." *Id.* at 1392. In particular "diversion of sales to a direct competitor [is] the paradigmatic direct injury from false advertising." *In re McCormick & Co., Inc., Pepper Prod. Mktg. & Sales Practices Litig.*, 215 F. Supp. 3d 51, 58 (D.D.C. 2016) (*citing Lexmark* at 1393-94); *see also Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 799 fn. 5 (5th Cir. 2011) ("a case of one competitor's directly injuring another by making false statements about his own goods and thus inducing customers to switch from a competitor presents a classic Lanham Act false-advertising claim").

Where a plaintiff directly competes with a defendant and the defendant's misrepresentation has a tendency to mislead consumers, a "misrepresentation will give rise to a presumed commercial injury that is sufficient to establish standing." *Nutrition Distribution LLC v. PEP Research, LLC*, 2017 WL 3972509, at *4 (S.D. Cal. Sept. 7, 2017) (*citing TrafficSchool.com*, *Inc. v. Edriver Inc.,* 653 F.3d 820, 826-27 (9th Cir. 9011)).

The *McCormick & Co. case* provides very similar factual allegations to the present. In *McCormick & Co.,* the plaintiff Watkins alleged that the defendant McCormick—its competitor in the pepper market—misrepresented to consumers the amount of pepper in its pepper containers. *Id.* at 54. McCormick presented the court with an argument identical to Defendant's, i.e. McCormick argued that "there are no facts pled to show that these unidentified and supposedly confused consumers would have purchased Watkins pepper specifically, had they not been confused, as opposed to purchasing McCormick pepper anyway or purchasing some other brand of pepper." (RJN, Ex. A Motion to Dismiss at 9-10.)

The court rejected this argument describing McCormick's reading of the *Lexmark* decision as "irrational." *Id.* at 58. The court continued that "a deceptive act will virtually always first influence consumers, whose resulting actions affect a competitor's business interests." *Id.* "[T]here is no reason to infer that all confused

consumers would have—if enlightened—chosen a different pepper alternative instead of Watkins." *Id.*

Similarly here, there is no reason to assume that all consumers that were deceived by Better Booch's alcohol and sugar representations would have chosen a different kombucha drink.

Other post-*Lexmark* cases are instructive as well. For instance, only a few months after issuing the *Lexmark* decision the Supreme Court heard argument on a separate legal issue in *POM Wonderful LLC v. Coca-Cola Co.*, 134 S. Ct. 2228 (2014). *POM Wonderful* was almost identical to the present case — a beverage company sued its competitor for labeling misrepresentations in a multiple competitor market—yet the Supreme Court made no mention that its decision in *Lexmark* impacted *POM Wonderful*.

Also similar to the current case is *Nutrition Distribution LLC v. PEP Research, LLC*, 2017 WL 3972509, (S.D. Cal. Sept. 7, 2017). In *Nutrition Distribution,* the plaintiff argued that it was a competitor of defendant, that defendant mislabeled its body building supplements in a manner that was dangerous to consumers and violated applicable laws, and that such misrepresentations were harmful to the marketplace for dietary and natural nutritional supplements which included plaintiff's products. *Id.* at *4. The court determined that these allegations—which are very similar to Tortilla Factory's—were sufficient to plead a false advertising injury under the Lanham Act.

Nevertheless, Better Booch argues that courts "often" dismiss unfair competition claims with allegations of injury similar to Tortilla Factory's. In support of this argument offers four cases: (1) *Bobbleheads.com, LLC v. Wright Bros., Inc*., 259 F. Supp. 3d 1087 (S.D. Cal. 2017); (2) *Reliable Carriers, Inc. v. Excellence Auto Carriers, Inc.*, 2012 WL 1931519 (E.D. Mich. May 29, 2012); (3) *Blue Star Press, LLC v. Blasko*, 2018 WL 1904835 (W.D. Tex. filed Mar. 6, 2018); and (4)

*Wall & Assocs., Inc. v. Better Bus. Bureau of Cent. Virginia, Inc.*, 685 F. App'x 277, (4th Cir. 2017). These cases are not factually similar and have little precedential value.

*First*, in *Bobbleheads.com* the plaintiff plead only that defendant made misrepresentations and that plaintiff suffered damages without drawing any connection between the two.  259 F. Supp. 3d at 1097.  Thus, the Court granted the motion to dismiss with leave to amend commenting that, if plaintiff had allegations in the complaint that the misrepresentations could divert sales, then the court may not have dismissed the complaint.  *Id.* Review of the docket shows that plaintiff amended the complaint to include this allegations and thus no further motion to dismiss was filed against it.  (RJN Ex. B Bobbleheads Amended Complaint, ¶ 50.) As described above, Tortilla Factory included allegations of diversion, therefore no amendment is required.

*Second*, in *Reliable Carriers*, an Eastern District of Michigan case, the defendant alleged minor misrepresentations regarding fleet size and years in operation (350 trucks versus 208 trucks, and 50 years versus 30 years).  2012 WL 1931519, at *3.  The plaintiff had only been in operation for 3 years and had 6 trucks, therefore the court found the differences immaterial. The differences in the present case are obviously material: federal and state law regulate them precisely because they are material.

*Third*, in *Blue Star Press*, a magistrate report currently under review by the district judge in the Western District of Texas, the plaintiff failed to make any claims of direct injury.  2018 WL 1904835, at *6.  Rather, plaintiff made the unusual argument that by counterfeiting a competitor, the defendant was unfairly leveraging the competitor's reputation. The issue for plaintiff was that it failed to explain why the counterfeiting took market share away from plaintiff rather than the competitor who was counterfeited. Obviously this is very different from the present

case. Tortilla Factory alleges alcohol and sugar misrepresentations, not the counterfeiting of a competitor.

**Fourth**, in *Wall & Associates* a business alleged damages from a poor rating by the better business bureau. 685 F. App'x 277, 279 (4th Cir. 2017). The *Wall* Court determined that because the plaintiff did not allege any lost sales or other damages, injury was not sufficiently alleged. *Wall & Associates* did not deal with competitors for the same customers as here and is accordingly inapposite.

**E.       Equitable Relief Is Available To Plaintiff**

Our Court of Appeal recently ruled that California Department of Alcoholic Beverage Control exclusive jurisdiction to issue, deny, suspend and revoke alcoholic beverage licenses according to terms of the ABC Act and regulations adopted; however, the consequences of committing a violation of the ABC Act are not limited to those which the Department may impose on its licensees and do not bar contract, unfair competition and declaratory relief claims. *Wiseman Park, LLC v. S. Glazer's Wine & Spirits, LLC*, 16 Cal. App. 5th 110, 114 (Ct. App. 2017).  The court also pointed to language of the ABC Act to show (i) implicit recognition that the Department is not the exclusive forum for matters affecting the sale of alcohol (referring to criminal prosecution and punishment), and (ii) that it did not preempt parties from seeking court intervention to enjoin a nuisance under the Unlawful Liquor Sale Abatement Law. *Id*. at 127.  As the current action is not related to the issuance, denial, suspension and revocation of an alcoholic beverage license, there is no bar against a UCL action.

Better Booch cites to a prior unpublished Court of Appeal decision *Tryon v. DSB Enterprises, Inc.*, 2006 WL 234728 (Cal. Ct. App. Feb. 1, 2006).  *Tryon* concerned a plaintiff who was seeking to enjoin a restaurant licensed to sell alcohol from selling to minors.  The *Tryon* court determined that the Department had

1    exclusive enforcement rights over its licensees.  As the conduct at issue here is not a

2    licensing issue, *Tryon* is inapplicable.

3           **F.**       **The Disgorgement Requested is Restitutionary.**

4           Better Booch's arguments that disgorgement and restitution should be

5    stricken as to the UCL claim "conflates the issue of standing with the issue of the

6    remedies to which a party may be entitled. That a party may ultimately be unable to

7    prove a right to damages (or, here, restitution) does not demonstrate that it lacks

8    standing to argue for its entitlement to them."  *Clayworth v. Pfizer, Inc.*, 49 Cal. 4th

9    758, 789 (2010).

10          Tortilla Factory has properly alleged a right to the profits from customers that

11   were wrongfully diverted to Better Booch.  Tortilla Factory should be permitted to

12   pursue these remedies according to proof at trial.

13          **G.**       **The Complaint Sufficiently Alleges Aider and Abettor Liability**

14          Under the common law definition, a person "aids and abets the commission of

15   an intentional tort if the person ... knows the other's conduct constitutes a breach of

16   duty and gives substantial assistance or encouragement to the other to so act." *Fiol*

17   *v. Doellstedt,* 50 Cal.App.4th 1318, 1325 (1996) (quoting *Saunders v. Superior*

18   *Court,* 27 Cal.App.4th 832, 846 (1994)).  The Complaint properly alleges both the

19   Distributors' knowledge of and participation in Better Booch's scheme.

20          ***Distributors' Knowledge***. Distributors argue that Tortilla Factory's

21   allegations that they have knowledge of Better Booch's misrepresentations of

22   alcohol or sugar content fail because they are not sufficiently detailed or,

23   alternatively, that the Distributors do not have an obligation to test products for

24   sugar and alcohol content.  The second of the arguments presented by the

25   Distributors is an obvious straw man.  The Complaint does not argue that the

26   Distributors are under an obligation to test all of their products.  Rather, the

27   Complaint argues on information and belief that the Distributors are aware of the

28

22

alcohol and sugar misrepresentations, and it is implausible at this point to think that they are not aware, particularly in regard to Better Booch's alcohol content.  The Distributors are not licensed to distribute alcohol.  At a minimum, the allegations in the Complaint provide notice to the Distributors that they are improperly distributing Better Booch's alcoholic beverages.  Accordingly, Tortilla Factory is informed and believes that under the circumstances, the Distributors must have either been informed by Better Booch of the alcohol content or have done their own testing to determine if the allegations are true.

In asserting a plausible claim, nothing in *Twombly* or *Iqbal* precludes or alters the right of plaintiffs to plead essential facts based on "information and belief" if otherwise appropriate. *Arista Records LLC v. Doe 3* 604 F3d 110, 120 (2nd Cir. 2010); *In re Superior Air Parts, Inc.*, 486 BR 728, 740 (ND TX 2012) (fact that allegation begins with "information and belief" does not "automatically" render it legally insufficient).

The Distributors provide no legal foundation to challenge the Complaint's allegations of knowledge.  The case law they provide is inapposite.  In *In re Hydroxycut Mktg. & Sales Practices Litig.*, 299 F.R.D. 648 (S.D. Cal. 2014), class action plaintiffs sued both manufacturers and retailers of a nutritional supplement for alleged misrepresentations on the label under the UCL.  At 652.  The *Hydroxycut* court rejected plaintiffs' argument that retailer defendants "need not have known about the tortious nature of [the defendant-manufacturer's] representations to be held liable as aider and abettors." *Id.* at 657.  In the instant case, Tortilla Factory does not argue that the Distributors' knowledge is irrelevant.  Rather, Tortilla Factory has alleged on information and belief that under the circumstances the Distributors must know of their own continued violation of state and federal statutes and regulations.

*In re Jamster Marketing Litig.*, 2009 WL 1456632, (S.D. Cal. May 22, 2009) is similarly inapplicable.  In *Jamster*, class action plaintiffs sought to hold AT&T and T-Mobile liable for the false advertising of a content provider through the UCL.  2009 WL 1456632, at *8.  The complaint in *Jamster* alleged that AT&T and T-Mobile were made aware of Jamster's misrepresentations by consumers and public authorities, yet AT&T and T-Mobile continued to process payments for Jamster subscription services.  The participation in the enterprise of the payment processing was the issue, not Jamster's knowledge which was assumed.  *Id.*

Finally, in *Schulz v. Neovi Data Corp.*, 152 Cal. App. 4th 86 (2007), the court dismissed two payment processing defendants involved in an alleged illegal lottery website.  There, the plaintiff again alleged in only conclusory terms the participation in the scheme by processing payments, far below the allegations here of notice of independent statutory and regulatory violations from which knowledge can be inferred.

**_Distributors' substantial assistance or encouragement_**.  Distributors alternatively argue that they have not substantially assisted or encouraged Better Booch in its misrepresentations.  This could not be farther from the case.  The Distributors distributed the offending products through retail stores *in violation of California state law*.  Better Booch being able to take advantage of a Distributor that did not have to go through state alcohol licensing procedures was a clear advantage.  A significant challenge in distributing kombucha is the limited number of distributors that both have the proper licenses and have refrigerated transportation.  It is precisely this illegal distribution that continues to this day that Tortilla Factory is trying to enjoin by including the Distributors as defendants in this lawsuit.  It is inconceivable that the Distributors could insulate themselves from a lawsuit by claiming to lack knowledge or participation in the illegal enterprise.

24

1   The Distributors rely on *Parent v. MillerCoors LLC*, 2016 WL 3348818 (S.D.

2   Cal. June 16, 2016) for the idea that they should not be liable for the

3   misprepresentations on the products they are selling, however, this case present the

4   exact opposite scenario.  In *MillerCoors,* a consumer-plaintiff tried to hold

5   *MillerCoors*, the brewer of the beer, liable for the alleged misrepresentations of

6   retailers.  The *MillerCoors* court did not address whether distributors could be held

7   liable for knowingly distributing a product with advertised misrepresentations as

8   would be the case here.

9   *Perez v. Monster Inc.*, 149 F. Supp. 3d 1176 (N.D. Cal. 2016) is similarly

10   dissimilar to the present case.  In *Perez,* the plaintiff alleged that Best Buy had

11   "authorized" and "affirmed" the misrepresentation by the co-defendant in its

12   advertisement without reference to what specific statements Best Buy made.  *Id.* at

13   1187.  The instant case does not concern subsequent advertising by the Distributors

14   of the product, but rather their knowing illegal distribution of the product.

15   Separate and apart from aiding and abetting liability, the Distributors compete

16   directly with Tortilla Factory.  Tortilla Factory distributes some portion of its

17   kombucha itself thereby competing directly with the Better Booch kombucha

18   product that the Distributors are distributing.  If the Court does not believe that

19   aiding and abetting liability is appropriate in this instance, Tortilla Factory would

20   ask for leave to amend to clarify its direct cause of action against the Distributors.

21   **V.   CONCLUSION**

22   For the foregoing reasons, Tortilla Factory asks that the Better Booch's

23   motion to dismiss be denied in its entirety.  To the extent the Court is inclined to

24   grant the motion to dismiss in whole or in part, Tortilla Factory respectfully requests

25   leave to amend.

26

27

28

OPPOSITION TO MOTION TO DISMISS

DATED: July 2, 2018          LEVATOLAW, LLP


                             By: /s/ Stephen D. Weisskopf
                                 Stephen D. Weisskopf
                                 Attorneys for Plaintiff TORTILLA FACTORY,
                                 LLC

OPPOSITION TO MOTION TO DISMISS